IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MACARTHUR REEVES,<br><br>      Plaintiff<br><br>  VS.<br><br>MICHAEL J. ASTRUE,<br>S.S. Commissioner,<br><br>      Defendant | NO. 5:07-CV-268 (CWH)<br><br>**SOCIAL SECURITY APPEAL**<br><br>BEFORE THE U. S. MAGISTRATE JUDGE |

## **O R D E R**

This is a review of a final decision of the Commissioner of Social Security denying plaintiff MacARTHUR REEVES' claim for benefits under the Social Security Act, 42 U.S.C. § 423. On June 22, 2000, plaintiff filed an application for Social Security Disability Benefits alleging disability beginning on November 15, 1996. The application was denied initially on January 11, 2001, and upon reconsideration on October 3, 2001. Plaintiff then requested a hearing before an administrative law judge ("ALJ") which was held on June 24, 2004. The ALJ found that plaintiff Reeves was not disabled in a decision dated July 30, 2004. The Appeals Council denied the plaintiff's request for review on May 25, 2007, making the hearing decision the final decision of the Commissioner. Jurisdiction arises under 42 U.S.C. § 405(g). All parties have heretofore consented for this matter to be determined by the United States Magistrate Judge.

### LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. ***Walker v. Bowen***, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. ***Richardson v. Perales***, 402 U.S. 389, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.[1] ***Bloodsworth v. Heckler***, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must, however, decide if the Commissioner applied the proper standards in reaching a decision. ***Harrell v. Harris***, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. ***Bloodsworth***, *supra*, at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id*.

The initial burden of establishing disability is on the claimant. ***Kirkland v. Weinberger***, 480 F.2d 46 (5th Cir. 1973). However, the claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. ***Oldham v. Schweiker***, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that he suffers from an impairment that prevents him from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. §§ 404.1 *et seq*.

Under the regulations, the Commissioner determines if a claimant is disabled by a five step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevents the performance of any other work.

---

[1] Credibility determinations are left to the Commissioner and not to the courts. ***Carnes v. Sullivan***, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. ***Wheeler v. Heckler***, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also* ***Graham v. Bowen***, 790 F.2d 1572, 1575 (11th Cir. 1986).

In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each impairment, if considered separately, would be disabling. ***Bowen v. Heckler***, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence presented is grounds for reversal. *Id*.

## DISCUSSION

In his complaint and brief in support thereof, plaintiff Reeves first avers that the ALJ failed to give credibility to the opinion of his treating psychiatrist Dr. Amanda Pathiraja. Plaintiff concludes that Dr Pathiraja's opinions were rejected by the ALJ because the start date of the plaintiff's alleged disability was not noted in the doctor's report.[2] Upon examining the ALJ's written decision, the undersigned notes and accepts the following evaluative excerpts with regard to the above contention:

> -The record also contains a statement dated June 22, 2004, from the claimant's treating psychiatrist Amanda Pathiraja, M.D. In her statement, Dr. Pathiraja opined that the claimant's mental condition meets the requirements of Section 12.04A. According to Dr. Pathiraja, the claimant has moderate depressive disorder with impairment in social functioning and decreased concentration, poor motivation, poor sleep, irritability, suicidal thoughts, anhedonia, and lack of energy. She went on to say that the claimant had no limitations with regard to understanding, remembering and carrying out instructions and only moderate limitations in responding appropriately to supervision, co-workers, and work pressures in a work setting. R. 57.

> -While a treating physician's opinion is generally accorded more weight, I have assigned little evidentiary weight to Dr. Pathiraja's opinion for the following reasons: she failed to give a date that the claimant's mental impairment met the severity of Section 12.04; mental health treatment records covering the period prior to March 31, 2002, do not support the level of severity she suggests; the claimant was less than truthful with treating and examining sources about ongoing alcohol and drug use; and claimant testified that he enjoyed visiting with the older veterans at the War Veterans Home. Based on my review of the evidence I have reached a different conclusion. R. 57.

---

[2]It is important to note that it is undisputed that plaintiff is insured for disability benefits only through March 31, 2002.

-3-

Plaintiff Reeves next claims that the ALJ ignored and/or improperly disregarded medical evidence of his mental disability that was recorded during the plaintiff's stay at the Georgia War Veteran's Home. Upon examining the ALJ's written decision, the undersigned notes and accepts the following:

> -Treatment records from the VMAC covering the period April 1998, through March 31, 2002, demonstrate that the claimant was hospitalized in October 1998 for depression; otherwise, he underwent intermittent outpatient treatment for depression. In fact, his physician noted that he was non compliant with taking his psychotropic medications. Further, there is evidence in the record that the claimant failed to show and/or cancelled numerous mental health appointments between 1999 and April 2001. In fact, he failed to show for 14 out of 28 appointments, despite the fact that he was a resident in the Veteran's Home for much of that time. Upon resuming his medications and counseling, he reported improvement with his depression. Despite the fact that Mr. Reeves continued to voice frustration regarding limitations from his physical condition, he related that his depressive symptoms did not interfere with his daily activity. R.56.

Plaintiff next asserts that the ALJ failed to credit and/or improperly rejected the January 21, 2004 opinion of his treating physician Dr. Ram Puri. Dr. Puri, in the aforementioned statement, opined that the plaintiff was permanently disabled. Upon examining the portions of the ALJ's written decision relating to Dr. Puri, the undersigned notes and accepts the following evaluative excerpts:

> -In April 2001, the claimant presented to Ram K. Puri, M.D. a cardiologist, with vague complaints of chest discomfort. His examination was within normal limits and Dr. Puri diagnosed chest pain secondary to gastroesophageal reflux disease. When he returned for a follow-up in August 2001, the claimant related experiencing some shortness of breath, moderate orthopnea, and swelling in the lower extremities. However, he denied any chest pain. Dr. Puri diagnosed congestive heart failure, sleep apnea, and chronic obstructive pulmonary disease and prescribed several medications. Subsequent records indicate that the claimant reported decreased swelling in the lower extremities and decreased chest discomfort with use of medication. R.55.

-In January 2002 Mr. Reeves presented to a local emergency room with chest pain on exertion. He was diagnosed with angina, treated appropriately, and was released from the emergency room. Thereafter, claimant followed up with Dr. Puri, who adjusted his medications. When Mr. Reeves saw Dr. Puri on January 14, 2002, he reported improvement in shortness of breath and chest discomfort and denied experiencing nausea, vomiting, or sweating. At that time Dr. Puri ordered a Holter Monitor, echocardiogram, and pulmonary function study. However, those tests were not performed until July 2002, and revealed only minor sinus tachycardia, mild to moderate sinus bradycardia, mild mitral regurgitation with an ejection fraction of 66%, and mild to moderate obstructive defect with significant improvement post bronchodilator, respectively. Subsequent records establish that the claimant reported intermittent chest discomfort relieved with the use of nitroglycerin. R.55.

-In a statement dated January 21, 2004, Dr. Puri opined that claimant could not do any heavy lifting, squatting, stooping, or prolonged standing or walking due to the combination of his impairments. Although Dr. Puri's statement was dated after the claimant's insured status had expired, it demonstrates that the claimant could perform at least sedentary exertion approximately 2 years after his insured status expired. R.55.

It is well settled that the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding it. ***Broughton v. Heckler***, 776 F.2d 960, 961-62 (11th Cir. 1985). A treating physician's report may be discounted when it is not accompanied by objective medical evidence or when it is conclusory. ***Schnorr v. Bowen***, 816 F.2d 578, 582 (11th Cir. 1987). The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician. ***Oldham***, *supra*, at 1084. ***Edwards v. Sullivan***, 937 F.2d 580, 583-84 (11th Cir. 1991). *See also* ***Wilson v. Heckler***, 734 F.2d 513, 518 (11th Cir. 1984).

As is apparent from the above excerpts, the ALJ noted the opinion evidence of the plaintiff's treating physicians concerning the severity of his condition and his limitations. However, the ALJ properly discounted it as not consistent with the objective medical evidence in the record.

In his decision, the ALJ notes that plaintiff suffers from mild degenerative disc disease, hyperlipidemia, gastroesophogeal reflux disease, hypertension with cardiovascular disease, COPD, congestive heart failure, sleep apnea, obesity, depression, a history of polysubstance abuse, and a personality disorder. All of these conditions have been successfully treated conservatively. None of these conditions have required surgery. The opinions of Drs. Pathiraja and Puri are inconsistent with this evidence in that they opine that plaintiff is unable to work. Thus, the undersigned finds that the ALJ properly evaluated the objective medical evidence and the opinions of the plaintiff's treating physicians.

Plaintiff's next contention is that the ALJ erred as a matter of law in failing to make any reviewable findings regarding plaintiff's ability to perform work-related functions because of his severe obesity. While the ALJ did not devote a separate section of his decision to limitations brought about by the plaintiff's obesity, the record is clear that the ALJ considered the limiting effect of the plaintiff's obesity in combination with his other limitations in the detailed evaluation of the plaintiff's RFC.

The undersigned notes that the plaintiff's complaint also contains the following assertion: "Plaintiff further shows that Defendant erred in failing to evaluate claimant's subjective testimony of disabling pain under the proper legal standard." While this statement appears in the complaint, the plaintiff has failed to support this allegation either in his complaint or in his brief in support thereof. Nonetheless, the undersigned will briefly address this averment.

It is well settled that it is not enough for a claimant to provide subjective accounts of disabling limitations. These subjective accounts must be supported by evidence of an underlying medical condition along with either objective medical evidence confirming the severity of the alleged limitation arising from that condition or medical evidence that the objectively determined medical condition is of a severity that could reasonably be expected to give rise to the alleged limitation. ***Edwards v. Sullivan***, 937 F.2d 580, 584 (11th Cir. 1991); 20 C.F.R. Sections 404.1508 and 404.1529. Furthermore, the ALJ can reject such testimony if he articulates explicit and adequate reasons for doing so. ***Holt v. Sullivan***, 921 F.2d 1221, 1223 (11th Cir. 1991).

In assessing plaintiff Reeves's credibility, the ALJ found that the plaintiff's medically determinable impairments have resulted in discomfort and limitation of motion to the lumbar spine, but that the plaintiff's subjective allegations of disabling pain and other symptoms were not credible. This conclusion, according to the ALJ, is because the plaintiff's allegations were out of proportion with the objective medical evidence and because the medical evidence had established only conservative treatment. In making this determination, the ALJ considered the effect of plaintiff's impairments individually and in combination, his subjective complaints in light of the regulations, and the medical evidence. R.54.

In the view of the undersigned, the Commissioner did not err in finding the plaintiff's subjective complaints not fully credible.

## CONCLUSION

For the reasons set forth above, it is the opinion of the undersigned that the ALJ properly applied the relevant legal standards and that his findings are supported by substantial evidence. Therefore, the Commissioner's denial of benefits is **AFFIRMED**.

SO ORDERED, this 8th day of JULY, 2008.



                                          CLAUDE W. HICKS, JR.
                                          UNITED STATES MAGISTRATE JUDGE